UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN PROTECTION AND ADVOCACY SERVICE, INC., | Case No. 5:05-cv-128 |
| Plaintiff, | HONORABLE PAUL MALONEY |
| v. | |
| PATRICIA L. CARUSO, in her official capacity as Director, Michigan Department of Corrections, | |
| Defendant. | |

**Opinion and Order**

**Adopting the R&R without Objection;
Staying the Case for One Year,
Except the Pending Cross-Motions for Partial Summary Judgment**

This is a civil-rights action under 42 U.S.C. § 1983. Plaintiff Michigan Protection and Advocacy Service, Inc. ("MPAS") is a private non-profit entity that is statutorily authorized "to monitor facilities and programs that house individuals with mental illnesses and developmental disabilities, to investigate suspected incidents of abuse and neglect, and to pursue administrative, legal, and other remedies on behalf of [such] individuals . . . wherever programs for such individuals are operated within the State of Michigan . . . ." *See* Third Amended Complaint filed Nov. 20, 2006 ("Comp") ¶¶ 9-10. MPAS challenges the conditions under which the defendant Michigan Department of Corrections ("MDOC") confine certain mentally ill and disabled prisoners who are under the age of 27 ("prisoners"). This challenge centers on but is not limited to the Michigan Youth Correctional Facility ("MYCF") in Lake County, which operated as a maximum-security ("Level V") prison from

July 1999 until its closure in October 2005,[1] housing about 480 male prisoners between the ages of 14 and 19 who were convicted and sentenced as adults. *See* Comp ¶¶ 2, 9-11, and 23.

In particular, MPAS challenges MDOC's alleged use of isolation and its failure to provide adequate mental-health and educational services, both of which it contends violates the prisoners' Eighth Amendment right to be free from cruel and unusual punishment and their rights under the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), the Rehabilitation Act of 1974 section 504 as codified at 29 U.S.C. § 794 ("Rehab Act"), and the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* ("IDEA"). *See* Comp ¶¶ 1, 4, 525, 528-29. MPAS also contends that MDOC violates prisoners' Fourteenth Amendment due-process right by imposing "major misconduct" punishments without determining whether the prisoner should be held responsible for his actions, *see* Comp ¶¶ 527, leading to negative disciplinary records and security designations that followed MYCF prisoners to other facilities, *see* Comp. ¶ 28. Finally, MPAS alleges that MDOC retaliated against certain prisoners for cooperating with MPAS and participating in this lawsuit, violating their federal constitutional right of access to the courts. *See* Comp ¶¶ 28 and 530.

MPAS's complaint does not seek compensatory or punitive damages. Rather, it seeks a declaration that MDOC has violated the Eighth Amendment, the Americans with Disabilities Act

---

[1] According to MPAS,

> Until October 2005, male youth under the age of 19 who were committed to the MDOC, after a brief stay at the reception center, were assigned to MYCF, where they generally were held until age 19. Since October 2005, MDOC has assigned these youth, after a brief stay at the reception center, to other MDOC facilities and has transferred youth who were housed at MYCF in October 2005 to other MDOC facilities. Female youth sentenced as adults have been and are confined at the Robert Scott Correctional Facility.

Comp. ¶ 26.

("ADA"), and the Individuals with Disabilities Education Act ("IDEA"), and a permanent injunction that (1) prohibits subjecting mentally ill prisoners to the conditions described, (2) trains MDOC staff to ensure that they do not punish young prisoners for symptoms of their mental illness or developmental disability, (3) grants adequate special-education and mental-health services to prisoners who have been affected by the challenged practices, (4) adjust the security status of prisoners affected by the failure to consider the prisoner's disability or mental illness before imposing punishment or security classification, (5) adjust the parole eligibility of prisoners who were housed at MDOC, to reflect MYCF's use of administrative segregation and its failure to provide adequate education and mental-health services. *See* Comp at 87-88 (Prayer for Relief ¶¶ 1-6). MDOC also seeks attorney fees and costs under 42 U.S.C. § 1988. *See* Comp at 88 (Prayer for Relief ¶ 7).

On January 30, 2008, MPAS moved for partial summary judgment on a purely legal question. MPAS seeks a declaration "that students over the age of 22 but under the age of 27 who are in the custody of Defendant are entitled to special education services" under the Michigan Mandatory Special Education Act, M.C.L. §§ 380.1701 - 380.1766 ("the Act"), while MDOC seeks, roughly, a contrary declaration. MDOC filed an opposition brief on February 29, 2008; MPAS filed a reply brief on March 14, 2008; and with leave of court, the Michigan Department of Education ("DOE") filed an *amicus curiae* brief in support of MDOC on April 1, 2008.

On Tuesday, July 29, 2008, the Honorable Ellen S. Carmody, United States Magistrate Judge, issued a Report and Recommendation ("R&R") stating as follows:

> The Court held settlement conferences on the following dates: September 15, 2006, March 2, 2007, and August 21-22, 2007. The Court also conducted telephone status conferences regarding the progress of settlement discussions on: August 29, 2006, April 3, 2007, December 13, 2007, January 16, 2008, and May 14, 2008. The parties last appeared before the Court on July 24, 2008. They have developed an action plan for implementation of agreements reached in this case. The Court reviewed the plan and discussed it with the parties at the hearing. The plan will not be filed in the case

Case 5:05-cv-00128-PLM   ECF No. 226 filed 08/12/08   PageID.1376   Page 4 of 5

> as it is subject to FED. R. EVID. 408; however, it is available for the Court's review.
>
> The undersigned recommends that this matter be stayed for a period of twelve months, during which time the negotiated plan will be implemented and, if all goes well, papers stipulating to dismissal of the case with prejudice will be filed soon thereafter.
>
> * * *  However, the parties have been unable to agree to the entry of a consent judgment at this time.
>
> Also it should be noted that the issue of attorneys' fees has been specifically reserved. Further, the pending motion for partial summary judgment is specifically excepted from the parties' negotiations.

R&R at 1-2 (docket numbers omitted).

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." *See Deruso v. City of Detroit*, 121 F. App'x 64, 66 n.2 (6th Cir. 2005) ("The Rule requires parties to file objections to a magistrate's report and recommendation within ten days of the time the report is filed.") (citing FED. R. CIV. P. 72(a)).

Federal Rule of Civil Procedure 6 begins, "In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included." FED. R. CIV. P. 6(a). Thus, the ten-day objection period began on Wednesday, July 30, 2008. Days one through three of the period ran from Wednesday, July 30 through Friday, August 1.

Rule 6 further provides, "When the period of time prescribed or allowed is less than 11 days,

-4-

intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." FED. R. CIV. P. 6(a). Thus the court excludes Saturday, August 2 and Sunday, August 3. Days four through eight of the period ran from Monday, August 4 through Friday, August 8. The court excludes Saturday, August 9 and Sunday, August 10, and days nine and ten of the period were Monday, August 11 and Tuesday, August 12.

Thus, the ten-day period for filing objections expired at midnight on Tuesday, August 12. No party filed objections by that deadline, so no review of the R&R is required under a *de novo* or any other standard.

## ORDER

Accordingly, the Report & Recommendation is **ADOPTED without objection**.

This case is **STAYED** through and including August 31, 2009.

No later than August 31, 2009, the parties **SHALL FILE** a joint status report indicating whether they intend to file a joint stipulation of dismissal with prejudice of MPAS's claims, and how they intend to address the issue of attorney fees and costs.

This is not a final order.

**IT IS SO ORDERED this 12th day of August 2008.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge